27 C.C.P.A. (Patents)

## In re ALLEN.
### Patent Appeal No. 4299.

Court of Customs and Patent Appeals.
April 1, 1940.

James H. Littlehales, of Washington, D. C., and Albert G. McCaleb, of Chicago, Ill., for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for want of patentability over the cited prior art, three claims of appellant's application for a patent, numbered 3, 4, and 5. One claim was allowed by the examiner.

The alleged invention relates to salt treatment of cereal grits. Claim 3 is directed to the method, while claims 4 and 5 define the product. The claims read as follows:

"3. The method of salt treating cereal grain grits, to protect them against weevils and similar pests, which consists in agitat-

,ing a mass of said grits, spraying a concentrated salt solution upon the grits while they are being agitated and then repeating the agitation until the several grits are substantially as dry and devoid of surface salt as they were before the spraying of the salt solution thereon.

"4. Cereal grain grits, substantially immune from the ravages of weevils and similar pests, each grit containing a quantum of salt and being substantially devoid of any surface salt.

"5. A brine impregnated cereal grain grit, substantially immune from the ravages of weevils and similar pests, such grit containing a quantity of salt uniformly deposited throughout the grit, said grit having a moisture content approximately that prior to impregnation and being substantially devoid of surface salt.

The references cited are: Gaff, 687,221, November 26, 1901; Humphries, 983,719, February 7, 1911; Greville, 1,306,333, June 10, 1919; Schreiber, 1,444,528, February 6, 1923.

The Board of Appeals in its decision held that the Greville reference was not pertinent to the issue, and that the reference Gaff did not disclose appellant's process. Of the two remaining references the board found the patent to Schreiber to be more pertinent to the issue. We agree with this view and find it necessary to discuss only said patent in connection with appellant's disclosure.

Appellant's application states that his invention provides an improved salt treatment for grain cereal grits of the kinds usable for breakfast foods; that by his process the grits are individually impregnated with salt, but not coated therewith; that the grits are placed. in a mixer, and while being gently agitated are slowly sprayed with brine. The application further states: "The spraying of the saturated salt solution onto the gently agitated grits should occupy from two to three minutes, so that each of the grits will be dampened by and have an opportunity to absorb its proper minute proportion of the salt solution. The mixer is then operated at high speed for a period of substantially one-half hour for the purpose of developing internal ·heat by the continuous friction of grits on grits in the moving mass, which dissipates the brine water first from the individual grits, and then from the mass thereof, but leaves the brine salt in, but not on, the individual grits. The grits

are now in such condition that, if kept relatively dry, they stand adequately protected against the depredations of weevils and similar pests."

.The patent to Schreiber relates to the treatment of cereals. The patent states: "The object of my invention is to provide means for delivering a brine spray into a moving stream of cereal, such as ground feed, for the purpose of *impregnating* the material with the brine without, however, adding to the percentage of moisture contained therein." (Italics ours.)

After describing the apparatus employed, the patent states: "In the operation of the device, the fan, revolving at high speed, will take the ground feed away ·from the grinder, drawing it at a high velocity through the pipe leading from the grinder to the fan. During this movement of the feed I subject it to the spray of brine delivered in an atomized form, preferably at a point adjacent to the fan, though of course any other place of delivery may be employed, if desired. I have found that salt delivered to the ground cereal in the form of a brine *will be readily absorbed by the ground particles and the saline agent uniformly distributed through the material* and without adding to the percentage of moisture contained in the mixture when it is delivered to the bins. In other words, the heat of the ground material resulting from the operation of the grinder and the action of the fan will remove completely all trace of moisture contained in the saline solution, leaving the ground material *impregnated* to the desired degree with the salt. I am therefore able with this apparatus to deposit the desired amount of salt in the feed without adding to the percentage of moisture contained therein when the material is discharged from the mill." (Italics ours.)

In discussing this patent and its application to the claims before us the board in its decision stated:

" * * * Apparently the brine penetrates the particles in the cereal in the same manner as in appellant's process. In this patent it is stated that the moisture from the brine is dissipated by the heat resulting from the grinding and also by the action of the fan. Appellant contends that the removal of moisture in this way will cause the deposit of salt upon the surfaces of the cereal· particles. No mention is made of this fact in the patent. No good reason is seen for assuming that salt will be de-

posited upon the surface if none is deposited in the carrying out of appellant's process. Apparently it is immaterial whether or not the heat is generated as a result of grinding or from any other cause for claim 3 merely calls for agitation during spraying 'and then repeating the agitation until the several grits are substantially dry'. In the Schreiber process the material going from the mill must be in a state of agitation and it is further agitated as it passes through the blower and outlet pipe 6. We must therefore hold that claim 3 is worded broadly enough to read on the Schreiber patent.

"It is not seen that the product defined in claims 3 [4] and 5 differs materially from that produced by the Schreiber process."

We are in accord with the views of the board above quoted. The Schreiber patent states that the object of his process is to secure impregnation of the cereal with salt, without adding to the percentage of moisture contained therein when the material is discharged from the mill. This is exactly the object of appellant's claimed invention.

Appellant's brief, after describing his process up to the point of the introduction of the saline solution, states: "At this stage of the process appellant's grits, with their film of saline solution, resemble Schreiber's grits at the moment during which they are covered with a film of brine. It is at this point, however, that the distinction between appellant's process and Shreiber's process also becomes most apparent. *Whereas, in the Schreiber process, the circumambient film of moisture is evaporated almost instantaneously before penetration into the grits occurs, leaving a film of surface salt, in appellant's process the film of brine is protected against evaporation and is caused to penetrate the grits because of the long continued agitation of the grits in a compact mass.* Within this compact mass evaporation cannot occur as it does in Schreiber's air stream and consequently absorption is completed without the formation of a surface film. When the second more violent agitation is imparted to the mass of grits, evaporation takes place from the inside of the grits, leaving the salt uniformly distributed therewithin, as depicted in Fig. 5." (Italics quoted.)

It will be observed that appellant ascribes the success of his process, as compared with the process of Schreiber, to the "long continued agitation of the grits in a compact mass." No such limitation, however, is found in claim 3, but degrees of agitation are embraced in claim 2, which was allowed.

Again, appellant contends that his process is distinguished from the process disclosed by Schreiber in that Schreiber discloses an air agitation of the cereal while appellant employs a mechanical agitation of the grits. Here, also, appellant would read a limitation into claim 3 which is absent therefrom.

It is well established that where claims are so broad as to read upon the prior art, the court cannot read into them limitations which would avoid such prior art, even if an applicant's application would support patentable claims, had they been made. In re Stern, 40 F.2d 1000, 17 C.C. P.A., Patents, 1234.

The same observation is applicable to appellant's contention that the word "agitation," as used in claim 3, should be limited to mechanical agitation of a relatively closely packed mass of grits.

There is nothing ambiguous in the word "agitation," as used in the claims. Appellant could have limited the claim to mechanical agitation, but instead he chose to claim "agitation" broadly. He cannot now, to avoid the prior art, be permitted to limit his claim to mechanical agitation.

We find no patentable distinction between the process disclosed by Schreiber and that defined in claim 3.

With respect to the product claims, 4 and 5, there can be no question but that Schreiber discloses a cereal impregnated with salt, having a moisture content approximately that prior to impregnation. The only question is whether Schreiber discloses a product "substantially devoid of surface salt."

The Board of Appeals in its decision stated: " * * * No good reason is seen for assuming that salt will be deposited upon the surface (of Schreiber's product) if none is deposited in the carrying out of appellant's process. * * *"

In Schreiber the material is agitated by means of a suction fan, and the heat of the ground material coming from the grinder, together with the action of the fan, dries the material. In appellant's process the material is dried by internal heat produced by the continuous friction of grits upon grits in the moving mass.

It would seem that friction of Schreiber's particles of cereal, resulting from contact with each other after leaving the brine spray, would accomplish the same result, though perhaps not so quickly as if violently agitated, as appellant provides, and for which he has been allowed a claim. In Schreiber, after the material leaves the spray it enters a pipe, the length of which is not stated; but it is stated that the ground material is delivered "to the bins or any other desired point." Obviously the material would be in a state of agitation to the point of delivery, and if the point of delivery was some distance from the spray, it is obvious that the surface salt, if any, would be substantially removed by reason of the agitation of the material during its progress through the pipe.

We are not convinced that the Board of Appeals erred in its construction of the Schreiber patent, and the decision appealed from is affirmed.

Affirmed.

GARRETT, P. J., took no part in the consideration or decision of this case.